[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action. The substituted plaintiff, Michael Ricci Realty, LLC, purchased the property in question on October 30, 1997, from WHTR Real Estate, which in turn had obtained the property by foreclosure on July 31, 1997, from Mareq Associates. The defendant Alexandre Clark Associates ("ACA") had entered into a written lease with Mareq on or about November 18, 1992; the lease, by its terms, terminated on November 30, 1995. The defendant and Mareq apparently negotiated for a new lease, but the negotiations fell apart and Mareq served a notice to quit on the defendant in February, 1996. The subsequent summary process action, No. SPH 86781, was dismissed by Judge DiPentima on or about July 1, 1996.
As noted above, WHTR obtained the property by foreclosure from Mareq at the end of July, 1996. From October, 1996, through May, 1997,[1] the defendant paid $1631.11 each month. Two of those monthly checks had "rent" written on them. The defendant did not pay for June or July, because WHTR had issued a notice to quit on June 6, 1997. At least since November, 1995, there have been some matters of dispute regarding the condition of the premises.[2] The summary process action following the June 6, 1997, notice to quit apparently was withdrawn.
The notices to quit, one for each of the portions noted in footnote two, were served in July, 1997, and this summary process action follows. The revised complaint contains eight counts, four as to each portion. For the purpose of this opinion, as there is no significant difference between the portions, only four counts need to be considered. The first count alleges that on July 1, CT Page 12348 1997, the plaintiff WHTR entered into a month to month rental agreement with ACA and that the agreement has terminated for lapse of time. The second count alleges that there ACA never had a right or privilege to occupy the premises; the third count alleges that it originally had the right or privilege to occupyother than under a rental agreement[3] and that the right has terminated. The fourth count alleges nonpayment of rent for the months of June and July.
It is quite clear that the second count was not proved, as there quite clearly was a rental agreement with Mareq. There is no serious dispute on this point, especially as a written lease apparently signed by both parties was introduced into evidence. Because the second count was disproved by the prior agreement with Mareq, so is the third: the existence of a rental agreement in the past contradicts the allegation that there once was a right or privilege to occupy other than under a rental agreement. As this is the ground stated in the notice to quit, it cannot be amended.
The first and fourth counts allege lapse of time and nonpayment of rent. For both of these grounds, a prerequisite is that a rental agreement be in effect at the time of the nonpayment or of the notice of the termination: without a rental agreement, there can be no successful action for nonpayment or for lapse of time. The plaintiff has the burden of proof as to the existence of the rental agreement.
The plaintiff has not sustained its burden of proof in the peculiar circumstances of this case. First, the notice to quit served by WHTR on June 6, 1997, was not introduced into evidence. If it was facially valid, it would have the effect of terminating any lease then in effect. There clearly could be no successful action for lapse of time or for nonpayment in July, as there was no evidence of any new agreement after the June notice to quit. The action for nonpayment for the June rent is somewhat more problematic, for even if there had been a month to month oral agreement prior to and extending into June, 1997, there was no evidence concerning any due date or grace period.[4] If the notice to quit was served prior to whatever absolutely final due date[5] there may have been, then there would no ability to evict for the failure to pay rent for that month.
Even more troublesome is the lack of clarity concerning the relationship of the parties after the termination of the summary CT Page 12349 process action brought by Mareq. Although ACA paid more or less regular monthly amounts to WHIZ or to its property manager, and "rent" was written of two of them, there also is no other evidence of a rental agreement. Mr. Alexandre testified that he was billed for the use of the premises and he thought he should be paying in order to be there; this understanding is as consistent with paying for use and occupancy as it is with paying "rent" under a rental agreement. Especially in consideration of the complexities of commercial leasing; see, e.g., Sullivan v.Nameaug Walk-In Medical Center, P.C., 35 Conn. App. 185 (1994);Larsen v. Timothy's Ice Cream, Inc., supra; Commissioner ofTransportation v. The Dock, 15 Conn. L. Rptr., p. 461 (Housing Session) (Tierney, J.); I find that a rental agreement subsequent to the summary process action brought by Mareq has not been proven.[6] I do not find persuasive a lay person's characterization of a payment as "rent" for the purpose of establishing a commercial rental agreement, as even many lawyers are undoubtedly unfamiliar with some of the distinctions.
It may well be that ACA once had a right or privilege to occupy the premises and that right has terminated, but that ground was not stated on either notice to quit. Judgment may enter for the defendant.
Beach, J.